## BARRICKLOW *et al.* v. BOICE *et al.*

No. 4156. Opinion Filed July 20, 1915.

(150 Pac. 1094.)

1. **CONTRACTS—Construction.** The paramount rule in the interpretation of contracts is to ascertain the intention of the parties and give effect to the same, if it can be done consistently with legal principles.

2. **EVIDENCE—Parol Evidence.** Where words employed to express a particular condition in a contract in writing are ambiguous, and cannot be satisfactorily explained by reference to other portions thereof, it is not error to admit parol evidence to show the meaning intended by the parties as to use of the words employed.

3. **SAME.** Parol evidence as to prior or contemporaneous conversations is not admissible to contradict or vary the terms of a written instrument plain and unambiguous in its terms.

4. **SAME—Explanaton of Contract.** Section 959, Revised Laws 1910, providing, "If the terms of a promise are in any respect

ambiguous or uncertain, it must be interpreted in the sense in which the promissor believed, at the time of making it, that the promisee understood it," authorizes parol evidence as to prior or contemporaneous conversations, for the purpose of determining the meaning and intention of the parties in the use of words. employed in the written contract, but does not authorize the introduction of parol evidence to vary the terms of a written contract plain in their meaning, nor to show that the intent of the parties differed from that implied in the words used.

5. **TRIAL—Reception of Evidence—Discretion of Court.** The order in which testimony is heard at the trial rests in the sound discretion of the trial, court, consistent wth the rules of the Code, and a clear abuse of this discretion must appear to warrant a reversal of a case for error in this particular.

(Syllabus by McKeown, C.)

*Error from Superior Court, Muskogee County;*

*Farrar L. McCain, Judge.*

Action by Charles Boice and M. D. Logan against C. A. Barricklow and Thomas Duncan. Judgment for plaintiffs, and defendants · bring error. Affirmed.

*A. A. Davidson* and *William B. Moore,* for plaintiffs. in error.

*W. C. Franklin* and *P. J. Carey,* for defendants· in. error.

Opinion by McKEOWN, C. This is an action commenced in the superior court of Muskogee county by defendants in error, Charles Boice and M. D. Logan, plaintiffs below, against the plaintiffs in error, C. A. Barricklow and Thomas Duncan, defendants below, to recover a certain sum of money alleged to be due for drilling an oil and gas well under a written contract. The cause was tried to a jury, which returned a verdict in favor of the plaintiffs, · upon which judgment was duly· entered.. To reverse this judgment this proceeding in error was commenced.

The provisions of the contract over which the controversy arose were as follows:

"Second. That the party of the second part shall commence actual drilling on said well within twenty days from the date hereof, and shall drill said well in a good and workmanlike manner to a depth of 2,000 feet, or to the Mississippi lime, unless oil or gas is found in paying quantities at a less depth. After the completion of said well to a depth of 1,500 feet, and the payment therefor by the parties of the first part, the party of the second part agrees to drill said well to a greater depth (but not to exceed 2,000 feet, or to the Mississippi lime), upon request of said first party.

"Third. Said well is to be drilled to the Mississippi line, or 1,500 feet, or as much deeper as necessary to complete contract."

The defendants in error, plaintiffs below, allege:

That they have completed the contract by drilling to the "Mississippi lime," which was reached at depth of 1,320 feet. "That it was agreed by and between the parties thereto that the term 'Mississippi lime,' used in said contract, shall mean, and was used to refer to, that formation of limestone rock which lay immediately below the following formations, which formations were peculiar to and lay just above said Mississippi lime, in the following order: First a streak of brown shale, then a green, sandy limestone, then a red rock and small brake of slate, and immediately below this the limestone, which is the Mississippi lime referred to in said contract, and is, in fact, the Mississippi lime. That the term 'Mississippi lime' is a term used by oil well drillers and operators, and is a term used to designate the formation lying just below and in close proximity to all of the above-named distinctive formations, and is so generally and commonly used and understood by oil well drillers and operators in Muskogee and in the vicinity and location where said contract was made and was to be performed. That before

the signing of said contract it was agreed between the parties that 'Mississippi lime' in said contract meant the formation as above set out, and that these plaintiffs were to drill said well to that formation."

The plaintiffs in error answered by a general denial, and alleged that they completed the contract by drilling the well to a depth of 1,670 feet, because of the refusal of the defendants in error to drill further, and pray judgment against the defendants in error by way of set-off or counterclaim in the sum of $1,455.98, the alleged amount necessarily expended to complete the well.

The plaintiffs in error for their first assignment of error complain of the giving to the jury the following instruction:

"You are to find from the evidence the meaning of the words 'drilled to the Mississippi lime.' You are instructed that in determining whether or not the well in controversy was drilled to the Mississippi lime you should take into consideration the question what the parties to this controversy meant by and understood to be the Mississippi lime, and, if there was no understanding between them at the time the contract was made, then the general belief and understanding among oil men as to what Mississippi lime is should govern."

—and of the refusal of the court to give plaintiffs in error's requested instruction:

"You are instructed that it is for you to determine what the parties meant by the words 'Mississippi lime.' used in the contract between them. In determining that question, however, you are instructed that the parties cannot be permitted to show a private express agreement as to the meaning of such words not expressed in the contract but that the words, 'Mississippi lime' are to be given that meaning which is ordinarily and usually accepted, and which generally prevails among oil men

and those engaged in the production of oil by means of wells drilled in the ground."

It is insisted that the instruction as given is erroneous, on the ground that it directs the jury to take into consideration what private express agreement the parties had with reference to the meaning of the term "Mississippi lime," if they had any; otherwise, to give the words the meaning ordinarily used and accepted among oil men. To determine the correctness of the instruction it is necessary to ascertain the admissibility of the testimony relative to what agreement, if any, the parties had with reference to the meaning of the words used in the contract.

Plaintiffs in error contend that the admission of the evidence was error, for the reason that it tended to vary the terms of the written contract, and for the further reason that the plaintiffs below changed their theory of the lawsuit by the introduction of rebuttal testimony as to the agreement between the parties as to what "Mississippi lime" should mean; whereas in their case in chief they had attempted to establish the allegations in their petition that the parties had agreed that the term should mean "Mississippi lime" in fact, as that term was understood and recognized among oil well drillers and oil men. The term employed to express a particular condition of the contract cannot be satisfactorily explained by reference to the other portions thereof, and it follows that it was pertinent to inquire as to the intent of the parties as to the use of the language.

"Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, if it can be done consistently with legal principles. It has been said that to this paramount rule all others are sub-

ordinate. The parties should be bound for what they intended to be bound for and no more." (6 R. C. L. section 225, p. 835.)

This rule of construction does not apply when the language of the contract is plain and unambiguous, for the obvious reason that to do so would be to abandon the well-settled rule that prior or contemporaneous conversations are not admissible to contradict or vary the terms of a written instrument.

Under section 959, Rev. Laws 1910, "If the terms of a prom se are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it," the testimony would be admissible in this case.

This section does not authorize the introduction of parol evidence to vary the terms of a written contract by showing the intent of the parties differed from that implied in the words used. *Inman Manufacturing Company v. American Cereal Company*, 133 Iowa, 71, 110 N. W. 287, 8 L. R. A. (N. S.) 1140, 12 Ann. Cas. 387.

"Preliminary negotiations may be considered for the purpose of determining the meaning and intention of the parties in the use of words employed in the instruments, but not for the purpose of varying or contradicting the plain terms of the instrument." (*Chicago Auditorium Association v. Corporation of Fine Arts Building*, 244 Ill. 532, 91 N. E. 665, 18 Ann. Cas. 253.)

The testimony being admissible relative to the meaning intended by the parties of the use of the words "Mississippi lime," it follows that the instruction complained of fairly submitted the issue to the jury.

The objection urged by plaintiffs in error as to the introduction of the testimony on rebuttal by the plaintiffs below is not well founded, as this is a matter that lies in the sound discretion of the trial court, unless there is an abuse of the same, and no such abuse of discretion appears from the record in this case as would warrant a reversal of the case upon that ground alone.

We therefore recommend that the judgment of the lower court be affirmed.

By the Court: . It is so ordered.